1  Alan Harris (SBN 146079)
   Abigail Treanor (SBN 228610)
2  HARRIS & RUBLE
   6424 Santa Monica Blvd.
3  Los Angeles, California 90038
   Telephone:  323.962.3777
4  Facsimile:  323.962.3004
   aharris@harrisandruble.com
5  atreanor@harrisandruble.com

6  Attorneys for Plaintiff
   KONSTANTINOS MOSHOGIANNIS
7

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11 KONSTANTINOS                      Case No:  CV-10-05971 EJD
   MOSHOGIANNIS, individually
12 and on behalf of all others similarly   **NOTICE OF MOTION AND**
   situated,                          **MOTION FOR PRELIMINARY**
13                                    **APPROVAL OF CLASS-ACTION**
                                      **SETTLEMENT, CONDITIONAL**
14              Plaintiffs,           **CERTIFICATION OF**
                                      **SETTLEMENT CLASS, AND**
15      v.                            **APPROVAL OF NOTICE**
                                      **PROGRAM;**
16 SECURITY CONSULTANTS
   GROUP, INC., a Tennessee           **MEMORANDUM OF POINTS AND**
17 Corporation, and Doe One through   **AUTHORITIES IN SUPPORT**
   and including Doe Ten,             **THEREOF**
18
                Defendants.           *Assigned to the Honorable Edward J.*
19                                    *Davila, 280 S. 1st Street, Courtroom 1,*
                                      *5th Floor, San Jose, CA, 95113,*
20
                                      Date:    September 23, 2011
21                                    Time:    9:00 a.m.
                                      Place:  Courtroom 1, 280 S. 1st Street,
22                                    San Jose, CA 95113
23                                    Complaint filed November 5, 2010
24
25
26
27
28

TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD: NOTICE IS HEREBY GIVEN that, on September 23, 2011, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1 located at 280 South First Street, San Jose, California 95113, Plaintiff Konstantinos Moshogiannis will move for an order granting preliminary approval of class-action settlement, conditional certification of a settlement class, and approval of notice program.  The Motion will be made and based upon this Notice of Motion; the Declaration of Alan Harris in Support of Motion for Preliminary Approval of Class-Action Settlement ("Harris Declaration"); and all of the pleadings, papers, and documents contained in the file of the within action.

DATED:  May 6, 2011                         HARRIS & RUBLE

                                            _____/s/_____
                                            Alan Harris
                                            Abigail Treanor
                                            *Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     Introduction. ...................................................................................1

II.     Procedural Background. ..................................................................2

III.     Summary of Plaintiff's Claims for Relief. ....................................2

    A.     Unpaid Wages and Overtime. ..........................................2

    B.     Liquidated Damages Under State Law and the Fair Labor
        Standards Act. ...................................................................2

    C.     Meal-and-Rest-Break Violations. .....................................3

    D.     Continuing Wages. ............................................................3

    E.     Wage-Statement Violations. .............................................3

IV.     Conditional Certification of the Settlement Class Should Be Granted
      for Settlement Purposes Only. .........................................................3

V.     Summary of the Proposed Settlement. ...........................................8

    A.     The Settlement Fund and the Payment of Claims. ...........8

    B.     Tax Implications. .............................................................10

    C.     Plaintiff's Enhancement Award. .....................................10

    D.     Release of Claims. ...........................................................13

    E.     Exclusions (Opt-Outs) and Objections. ...........................15

    F.     PAGA Payment to the LWDA. ..........................................15

VI.     Class-Notice Procedure. ................................................................16

VII.    Attorney's Fees and Costs. ...........................................................................17

VIII.  The Settlement is Fair, Reasonable, and Adequate. ......................................17

        A.      The Terms of the Proposed Settlement Are Fair. ...............................18

        B.      Likely Duration of Further Litigation. ................................................19

        C.      The Amount Offered in the Settlement. ...............................................20

        D.      The Extent of Discovery Completed and the Stage of the Proceedings. .........................................................................................21

        E.      Experience and Views of Counsel. ......................................................21

        F.      Reaction of Class Members to the Proposed Settlement....................22

IX.    Appointment of a Claims Administrator. ......................................................22

X.     Proposed Calendar. ......................................................................................22

XI.    Conclusion. ...................................................................................................23

# TABLE OF AUTHORITIES

## CASES

Adames v. Mitsubishi Bank, Ltd.
  133 F.R.D. 82 (E.D.N.Y. 1989)...........................................................................4

Allapattah Servs., Inc. v. Exxon Corp.
  454 F. Supp. 2d 1185 (S.D. Fla. 2006)..............................................................12

Arias v. Sup.Ct.
  46 Cal. 4th 969 (2009)......................................................................................15

Barnhill v. Robert Saunders & Co.
  125 Cal. App. 3d 1 (1981)................................................................................19

Bayles v. Am. Med. Response
  950 F. Supp. 1053 (D. Colo. 1996).....................................................................7

Bogosian v. Gulf Oil Corp.
  621 F. Supp. 27 (E.D. Pa. 1985).......................................................................12

Bradburn Parent Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.)
  2007 WL 1468847 (E.D. Pa. May 14, 2007)....................................................12

Cook v. Niedert
  142 F.3d 1004 (7th Cir. 1997)......................................................................11, 12

Coop v. DIRECTV, Inc.
  221 F.R.D. 523 (C.D. Cal. 2004)............................................................20, 21, 22

Cotton v. Hinton
  559 F.2d 1326 (5th Cir. 1977).........................................................................21

D'Alauro v. GC Servs. Ltd.P'ship
  168 F.R.D. 451 (E.D.N.Y. 1996)........................................................................4

Dukes v. Wal-Mart Stores, Inc.
  222 F.R.D. 137 (N.D. Cal. 2004).......................................................................4

Dunleavy v. Nadler
    213 F.3d 454 (9th Cir. 2000) ...........................................................3, 4, 11, 21

Earley v. Sup. Ct. (Washington Mut. Bank F.A.
    79 Cal. App. 4th 1420 (2000) ....................................................................19

Elliott v. ITT Corp.
    150 F.R.D. 569 (N.D. Ill. 1992)....................................................................5

Enterprise Energy Corp. v. Columbia Gas Transmission Corp.
    137 F.R.D. 240 (S.D. Ohio 1991).................................................................12

Flavel v. Svedala Indus.
    875 F. Supp. 550 (E.D. Wis. 1994) ...............................................................8

Flinn v. FMC Corp.
    528 F.2d 1169 (4th Cir. 1975) .....................................................................21

Glass v. UBS Fin. Servs., Inc.
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007)...................................................12

Grayson v. K-Mart Corp.
    79 F. 3d 1086 (11th Cir. 1996) .....................................................................8

Hanlon v. Chrysler Corp.
    150 F.3d 1011 (9th Cir. 1998) .....................................................................18

Hanrahan v. Britt,
    174 F.R.D. 356 (E.D. Pa. 1997).....................................................................21

Heagney v. European Am. Bank
    122 F.R.D. 125 (E.D.N.Y. 1988).....................................................................8

In re Continental Ill. Sec. Litig.
    962 F.2d 566 (7th Cir. 1992) .......................................................................12

In re Continental/Midlantic S'holders Litig.
    1987 WL 16678 (E.D. Pa. Aug. 29, 1987) .....................................................12

In re S. Ohio Correctional Facility
    175 F.R.D. 270 (S.D. Ohio 1997)..................................................................11

Int'l Molders' & Allied Workers' Local 164 v. Nelson
  102 F.R.D. 457 (N.D. Cal. 1983)..................................................................4

Jarvaise v. Rand Corp.
  212 F.R.D. 1 (D.C.D.C. 2002) ......................................................................4

Joseph v. Gen. Motors Corp.
  109 F.R.D. 635 (D.C. Colo. 1986).................................................................5

Lightbourn v. County of El Paso
  118 F.3d 421 (5th Cir. 1997) .........................................................................4

Linney v. Cellular Alaska P'ship
  151 F.3d 1234 (9th Cir. 1998) ................................................................4, 21

In re Pacific Enters. Sec. Litig.
  47 F.3d 373 (9th Cir. 1995) .........................................................................21

Mamika v. Barca
  68 Cal. App. 4th 487 (1998) ........................................................................19

Marshall v. Holiday Magic
  550 F.2d 1173 (9th Cir. 1977) .....................................................................16

Officers for Justice v. Civil Serv. Comm.
  688 F.2d 615 (9th Cir. 1982) .........................................................................4

Realite v. Ark Rests. Corp.
  7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...............................................................7

Rodriguez v. West Publ'g Corp.
  563 F.3d 948 (9th Cir. 2009) .......................................................................10

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
  2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. 2002)...........................................11

Sperling v. Hoffman-La Roche, Inc.
  118 F.R.D. 392 (D.N.J. 1988).........................................................................7

Staton v. Boeing Co.
  327 F.3d 938 (9th Cir. 2001) .......................................................................11

<u>Torrisi v. Tucson Elec. Power Co.</u>
   8 F.3d 1370 (9th Cir. 1993) ....................................................................18

<u>Van Bronkhorst v. Safeco Corp.</u>
   529 F.2d 943 (9th Cir. 1976) ..................................................................20

<u>Van Vraken v. Atl. Richfield Co.</u>
   901 F. Supp. 294 (S.D. Cal. 1995)...........................................................11

<u>Wilcox v. Birtwhistle</u>
   21 Cal. 4th 973 (1999) .............................................................................19

<u>Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.</u>
   76 F.R.D. 173 (S.D.N.Y. 1977) ...............................................................12

<u>Wynn v. NBC</u>
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) ......................................................7

## STATUTES

29 U.S.C. §201 .............................................................................................14

29 U.S.C.  § 211 ..............................................................................................7

29 U.S.C. § 216.............................................................................1, 3, 6, 7, 8

Cal. Bus. & Prof. Code § 17200. ...........................................................14, 15

Cal. Civ. Code § 1542..............................................................................15

Cal. Lab. Code § 201 ..................................................................................3

Cal. Lab. Code § 202 ..................................................................................3

Cal. Lab. Code § 203 ............................................................................18, 19

Cal. Lab. Code § 226 .............................................................................3, 5

Cal. Lab. Code § 226.7 ........................................................................3, 5, 18

Cal. Lab. Code § 512 ......................................................................................3, 5, 18

Cal. Lab. Code § 1194.2 .........................................................................................2

Cal. Lab. Code § 2699 ...............................................................................14, 15, 16

**RULES**

Fed. R. Civ. P. 23 ............................................................. 1, 3, 4, 6, 7, 8, 16, 17, 22

## I.    Introduction.

This Court should grant preliminary approval of a $683,130.00 settlement negotiated with Defendant Security Consultants Group, Inc. ("Defendant" or "SCG"). Plaintiff Konstantinos Moshogiannis ("Plaintiff" or "Moshogiannis") respectfully submits this Memorandum in Support of (1) preliminary approval of the Settlement between Plaintiff and Defendant; (2) conditional certification of a Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act, 29 U.S.C. § 216(b);[1] (3) approval of the form and method of Class Notice; and (4) appointment of a Claims Administrator.  This settlement should provide a minimum, average gross recovery of $30 per week worked for each participating employee.  (Harris Decl. ¶ 14.)  Given the uncertainty and the risks faced by the parties to the litigation, Plaintiff has determined that a $683,130.00 settlement is the most desirable way to resolve this matter.  After a careful analysis of all of the relevant factors, this Court should conclude that the terms and conditions embodied in the Settlement are fair, reasonable, and equitable; that they represent a good result; and that the risks and delay of additional litigation likely outweigh the potential benefits that might be derived from further litigation.

The settlement fund will be divided among all members of the Settlement Class who submit claims and will be calculated based on the number of compensable workweeks worked by the claimant during the Class Period.[2]  The parties estimate that there are approximately 254 former and current employees who qualify for reimbursement from the settlement fund and to whom claim forms will be mailed. (Harris Decl. ¶ 8.)  Assuming all current and former employees submit claims, the gross

[1] The "Settlement Class" is defined as:  "All natural persons employed by Defendant Security Consultants Group, Inc. in California as security personnel during the time period from January 1, 2007, through the date of preliminary approval of this Settlement."  (Settlement ¶ 20.)  (The Settlement is attached as Exhibit 1 to the Declaration of Alan Harris in Support of Motion for Preliminary Approval of Class-Action Settlement, Conditional Certification of Settlement Class, and Approval of Notice Program ("Harris Declaration") filed herewith.)
[2] The "Class Period" is from January 1, 2007, through the date of preliminary approval of the Settlement."  (Settlement ¶ 8.)

settlement payment per employee will be $2,689.48 each.  (Harris Decl. ¶ 14.)  Since the claims rate in cases of this nature is often less than fifty percent, the actual payments to participating Class Members will be substantially higher than the foregoing projections would suggest, for an average actual gross recovery of at least $5,000.00.  (Harris Decl. ¶ 14.)

## II.        Procedural Background.

This action was commenced as a putative class action on November 5, 2010, in the Superior Court of California, County of Santa Clara.   Beginning in December of 2010, the parties began discussing settlement.  (Harris Decl. ¶ 5.)  On December 29, 2010, Defendant removed the action to the United States District Court for the Northern District of California.   On March 7, 2011, Plaintiff filed the First Amended Complaint, the operative pleading ("Complaint").  In the Complaint, Plaintiff, employed in California by Defendant, alleged that Defendant had violated the California Labor Code and the Fair Labor Standards Act ("FLSA").  Thereafter, the parties exchanged class data and relevant employment and policy documents in order to conduct meaningful settlement negotiations.  The parties negotiated the terms of the Settlement over a four-month period.  (Harris Decl. ¶ 5.)

## III.       Summary of Plaintiff's Claims for Relief.

### A.        Unpaid Wages and Overtime.

It is Plaintiff's contention that Plaintiff and Class Members were not paid for all time worked.  In addition, Plaintiff likewise contends that he and Class Members were not paid proper wages in excess of eight hours in a day or forty hours in a week. Defendant denies all of Plaintiff's allegations and liability.

### B.        Liquidated Damages Under State Law and the Fair Labor Standards Act.

Plaintiff contends that he is entitled to liquidated damages under California labor law and the FLSA because Defendant's alleged failure to pay for all hours worked, including overtime, entitles Plaintiff and the Class to liquidated damages under section

1194.2 of the California Labor Code for minimum-wage violations and 29 U.S.C. §
216(b) for minimum-wage and overtime violations.  Defendant denies all of Plaintiff's
allegations and liability.

### C.     Meal-and-Rest-Break Violations.

Plaintiff contends that Defendant violated sections 226.7 and 512 of the California
Labor Code by failing to provide adequate rest breaks and meal periods to its security
guards.  Specifically, Plaintiff contends that Defendant had a policy that prevented
Plaintiff and the other security officers to leave their posts unless they were relieved by
another security officer.   Defendant denies all of Plaintiff's allegations and liability.

### D.     Continuing Wages.

Plaintiff contends that Defendant violated sections 201 and 202 of the California
Labor Code by failing to pay him and the putative Class Members all wages due and
owing upon the termination of their employment.  Defendant denies all of Plaintiff's
allegations and liability.

### E.     Wage-Statement Violations.

Plaintiff contends that Defendant violated section 226 of the California Labor Code
by failing to provide the information required by subsection (a) including the total hours
worked or the hourly rate worked by the employee.  See Cal. Lab. Code § 226.
Defendant denies all of Plaintiff's allegations and liability.

### IV.    Conditional Certification of the Settlement Class Should Be Granted for Settlement Purposes Only.

The parties seek conditional certification, pursuant to Rule 23 of the Federal Rules
of Civil Procedure and the FLSA, 29 U.S.C. § 216(b), of the "Settlement Class" defined
as:  "All natural persons employed by Defendant Security Consultants Group, Inc. in
California as security personnel during the time period from January 1, 2007, through the
date of preliminary approval of this Settlement."  (Settlement ¶ 4.)

There is authority to the effect that a pre-certification settlement is subject to a
somewhat higher level of scrutiny than one negotiated post-certification.  See, e.g.,

1   Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000).  However, concerns about the

2   rights of absent class members are dispelled by a careful fairness review of the settlement

3   by the trial court and by the procedural protections provided by Rule 23.  Officers for

4   Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459

5   U.S. 1217 (1983).  The trial court has wide discretion in certifying a class for settlement

6   purposes and will be reversed "'only upon a strong showing that the district court's

7   decision was a clear abuse of discretion.'"  Dunleavy, 213 F.3d at 461 (quoting Linney v.

8   Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)).

9        Class actions are favored, and Rule 23 is to be given a broad, rather than a

10  restrictive, interpretation in order to favor maintaining class actions.  Adames v.

11  Mitsubishi Bank, Ltd., 133 F.R.D. 82, 88 (E.D.N.Y. 1989); Labbate-D'Alauro v. GC

12  Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).  Rule 23 contains four

13  requirements that must be satisfied:  (1) The class must be so numerous "that joinder of

14  all members is impracticable," (2) there must be "questions of law or fact common to the

15  class," (3) the claims of the representative plaintiffs must be "typical of the claims of the

16  class," and (4) the class representatives must show that they "will fairly and adequately

17  protect the interests of the class."  Fed. R. Civ. P. 23(a).

18       Here, the numerosity requirement is met.  Again, the number of employees within

19  the Settlement Class is approximately 254.  Given that it has been held that a class of

20  forty is sufficient to justify certification, Int'l Molders' & Allied Workers' Local 164 v.

21  Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983), and given that common sense indicates

22  that joinder of all class members is "impracticable," the Class is sufficiently numerous to

23  justify certification.

24       Likewise, the commonality requirement is met.  In this regard, a plaintiff is *not*

25  required to show that there is commonality on *every* factual and legal issue.  Dukes v.

26  Wal-Mart Stores, Inc., 222 F.R.D. 137 (N.D. Cal. 2004); Jarvaise v. Rand Corp., 212

27  F.R.D. 1, 5 (D.C.D.C. 2002).  Instead, if there is *one* issue whose resolution will affect all

28  or a significant number of a class' members, then commonality exists.  Lightbourn v.

County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997).  With respect to the present matter, there are common questions of fact and law that affect the Settlement Class, which include (1) whether the Class Members were paid all of the minimum and overtime wages owing to them, (2) whether the Class Members took proper thirty-minute meal breaks, (3) whether Defendant provided adequate wage statements in compliance with section 226 of the California Labor Code, (4) whether the Class Members whose employment with Defendant had terminated were paid all of their wages by the relevant due date, (5) whether the Settlement Class Members received the ten-minute rest periods and thirty-minute meal breaks mandated by sections 226.7 and 512 of the California Labor Code and Section 12 of the relevant IWC Wage Order, and (6) whether Settlement Class Members executed proper meal break waivers.  These questions of fact and law predominate over issues that affect only individual Class Members (for example, the individual amounts owing to each Class Member on account of underpaid wages or missed breaks).  Moreover, even if it should turn out that the class definition includes Members who have not been injured or who do not wish to pursue claims against Defendant, that is not a bar to certification.  Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992).  Cf. Joseph v. Gen. Motors Corp., 109 F.R.D. 635, 639–40 (D.C. Colo. 1986).

Plaintiff also meets the typicality requirement.  His claims are very similar to those of any and all absent Class Members.  Plaintiff alleges he was a security officer for Defendant in the State of California, similar to the other Class Members.  Plaintiff and Class Members allegedly were not provided adequate minimum wage or overtime compensation, they allegedly were not properly provided their required rest and meal periods, they allegedly did not receive adequate wage statements, and, to the extent that their employment with Defendant terminated, they allegedly did not receive all wages due upon termination.

Finally, Plaintiff is an adequate Class Representative:  He has no conflicts of interest with Class Members, as he shares the Members' likely desire to be compensated

1    in full pursuant to the California Labor Code and FLSA.  (<u>See</u> Harris Decl. ¶ 12.)

2    Additionally, Plaintiff is committed to pursuing the claims of the Class Members, and

3    Plaintiff's motivation in retaining counsel and pursuing this action has been to collect

4    unpaid wages for Class Members and for himself.  (<u>See</u> Harris Decl. ¶ 12.)

5         In addition to the just-described four requirements, the action also must meet one

6    of the non-exclusive factors in Rule 23(b).  Rule 23(b) authorizes class certification if a

7    court determines that "questions of law or fact common to the members of the class

8    predominate over any questions affecting only individual members, and that a class

9    action is superior to other available methods for the fair and efficient adjudication of the

10   controversy."  Fed. R. Civ. P. 23(b)(3).  As briefly discussed with respect to the

11   commonality requirement, questions of law and fact predominate over questions affecting

12   only individual Members.  *The only individual determination is the quantification of*

13   *damages for each*.

14        To put things bluntly, the alternatives to conditional class certification are (1)

15   dozens of separate claim proceedings before the Division of Labor Standards

16   Enforcement, followed by a similar number of *de novo* trials in Superior Court, or, as is

17   more likely, (2) the large majority of Class Members will *never* have their claims

18   determined on the merits.

19        The parties also seek conditional certification of the Settlement Class comprised of

20   approximately 254 persons under the FLSA.  The distinctive feature of a collective

21   action, setting it apart from class actions under Rule 23 of the Federal Rules of Civil

22   Procedure, is that the members of a collective action must affirmatively opt into the

23   action in writing and thus become party-plaintiffs.  <u>See</u> 29 U.S.C. § 216(b).  There are

24   two requirements for certifying a collective action.  First, the persons other than the

25   named plaintiffs whose claims are to be asserted collectively must be "similarly situated"

26   with the named plaintiff.  Second, these persons must give their consent in writing.  29

27   U.S.C. § 216(b).

28        There is substantial federal authority for the proposition that the "similarly-

situated" requirement is met by a "modest factual showing" that "'requires nothing more than substantial *allegations* that putative class members were victims together of a single decision, policy or plan.'" <u>Bayles v. Am. Med. Response</u>, 950 F. Supp. 1053, 1066 (D. Colo. 1996) (quoting <u>Sperling v. Hoffman-La Roche, Inc.</u>, 118 F.R.D. 392, 407 (D.N.J. 1988)) (emphasis supplied). <u>See</u> <u>also</u> <u>Realite v. Ark Rests. Corp.</u>, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). Many courts, including those in the Ninth Circuit, utilize a two-tiered analysis. Courts adhering to this approach make "two determinations, on an ad hoc, case-by-case basis." <u>Wynn v. NBC</u>, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002). At the initial "notice stage," the court decides whether a class should be certified based on the pleadings, affidavits, and other evidence in the record. "Due to the minimal evidence at the court's disposal, this determination is made based on a fairly lenient standard, and typically results in a 'conditional certification' of a representative class." <u>Id</u>. The court then proceeds to authorize and monitor the issuance of 'notice' to prospective members. <u>Id</u>. A second, more rigorous review is undertaken after the plaintiff has propounded discovery, usually on a motion for decertification by the defendant. At that stage, the court weighs several factors in determining whether the collective plaintiffs are "similarly situated." <u>Id</u>.

Here, as discussed above, Plaintiff is "similarly situated" with Class Members. In the present situation, there will be no need for a two-tier analysis because Defendant has stipulated to the conditional certification of the collective action comprised of the approximately 254 members of the Settlement Class.

Plaintiff alleges he and the other Class Members are similarly situated in that (a) they worked as security officers for Defendant; (b) they were not properly compensated for all hours worked; (c) they were paid through the same payroll system; and (d) Defendant is required to keep payroll records for Plaintiff and the Class Members under 29 U.S.C. § 211(c).

Courts have found that the application of Rule 23 requirements for class certification are more difficult to meet than the similarly situated requirement of 29

U.S.C. § 216(b).  Standards for certification under 29 U.S.C. § 216(b) are far less stringent than those governing class actions under FRCP 23.  See Grayson v. K-Mart Corp., 79 F. 3d 1086, 1096, n. 12 (11th Cir. 1996); see also Flavel v. Svedala Indus., 875 F. Supp. 550, 553 (E.D. Wis. 1994) ("The 'similarly situated' requirement, in turn, 'is considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions 'predominate,'' Heagney v. European Am. Bank, 122 F.R.D. 125, 127 n.2 (E.D.N.Y. 1988), or presumably, the Rule 23(a) requirement that claims 'arise out of the same action or occurrence.'").  Here, Plaintiff has discussed at length above as to why certification of the Settlement Class is appropriate under Rule 23 of the Federal Rules of Civil Procedure.

For all of the foregoing reasons, this Court should conditionally certify the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

## V.    Summary of the Proposed Settlement.

### A.    The Settlement Fund and the Payment of Claims.

According to the Settlement, allocation of the $683,130.00 Gross Settlement Amount shall proceed as follows:  (1) thirty percent (30%) of the Gross Settlement Amount ("GSA"), or $204,939.00, in attorneys' fees to Class Counsel, plus reasonable litigation costs (estimated to be $5,000.00), subject to approval by the Court; (2) up to $7,500.00 enhancement award to Plaintiff, subject to approval by the Court; (3) the reasonable costs of the Claims Administrator to administer the Settlement, currently estimated to be $20,000; (4) $25,000.00 to the State of California Labor and Workforce Development Agency ("LWDA"); (5) Defendant's payroll taxes on the Participating Class Members' distribution; and (6) the "Net Settlement Amount"—after items (1) through (5) are deducted —to pay the timely and valid claims of the Class Members. (Settlement ¶ 21.)  No portion of the GSA shall revert to Defendant.  In no event shall Defendant be responsible for paying more than the Gross Settlement Amount. (Settlement ¶ 21.)

After *estimated* deductions of $209,939.00 for attorneys' fees, approximately $5,000.00 in litigation costs, $7,500.00 for the service payment to Plaintiff, $20,000.00 to pay for the services of the Claims Administrator, and the payment of $25,000.00 to the LWDA (assuming Court approval of these amounts), the Net Settlement Amount shall be approximately $395,691.00.  (Settlement ¶ 26.)  Class Members who file a valid, timely Claim Form will receive a portion of the Net Settlement Amount.  Each Participating Class Member's share of the Net Settlement Amount shall be calculated depending on the amount of Compensable Workweeks worked by the Class Member.[3]

The distribution formula is as follows:

(a)     The Class Members' distribution amounts, prior to any tax or payroll deductions, will be calculated by adding together the Initial Calculation Amount and the Supplemental Calculation Amount (if any):

(i)     A Class Member's Initial Calculation Amount shall be calculated by (1) dividing the Net Settlement Amount by the total number of Compensable Workweeks for the entire class (which will constitute the dollar value per Compensable Workweek); and (2) multiplying the dollar value per Compensable Workweek by the number of Compensable Workweeks worked by each Class Member who submits a timely and valid claim ("Participating Class Members").

(ii)     If not all Class Members submit timely and valid Claim Forms, a Class Member's Supplemental Calculation Amount shall be determined by (1) subtracting the total Initial Calculation Amount for all Participating Class Members from the Net Settlement Amount; (2) dividing the resulting figure by the total number of Compensable Workweeks worked by Participating Class Members (to calculate the Supplemental Amount Per Workweek); and (3) multiplying the

---

[3] "Compensable Workweek" is defined as all weeks (or portions of weeks) worked by Class Members while employed by SCG as security personnel in California during any time from January 1, 2007, to the date of the preliminary approval of the Settlement.

1  Class Member's number of Compensable Workweeks by the Supplemental

2  Amount Per Workweek.

3  (Settlement ¶ 26.)

4  **B.    Tax Implications.**

5  As explained in the Settlement, the Parties agree that One-Hundred Percent (100%)

6  of all payments to Participating Class Members will be treated as wages subject to W-2

7  reporting.  Therefore, normal payroll taxes and withholdings will be deducted pursuant to

8  state and federal law, and all required payroll contributions will be made on these

9  amounts.  SCG's payroll taxes as the employer will be deducted from the Gross

10  Settlement Amount and the portions paid for withholdings (including FICA and FUTA)

11  will be determined by the Claims Administrator.   The employee's portion of the payroll

12  taxes shall be deducted from the individual settlement amounts of the Participating Class

13  Members and Participating Class Members will be responsible for correctly

14  characterizing this compensation for tax purposes and paying any taxes owing on said

15  amounts.  The Claims Administrator will issue the appropriate tax forms to the

16  Participating Class Members.

17  **C.    Plaintiff's Enhancement Award.**

18  The Settlement provides for payment to the named Plaintiff as an incentive award

19  on account of the services that he has rendered as Class Representative.  See Rodriguez v.

20  West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) ("Incentive *awards* are fairly

21  typical in class action cases.  Such awards are discretionary and are intended to

22  compensate class representatives for work done on behalf of the class, to make up for

23  financial or reputational risk undertaken in bringing the action, and, sometimes, to

24  recognize their willingness to act as a private attorney general.") (emphasis in original)

25  (internal citations omitted).  Plaintiff's enhancement payment is entirely at the discretion

26  of this Court, a fact that is referenced in the proposed Notice to Class Members.  Since

27  Mr. Moshogiannis is still assisting counsels' work on this case, his Declaration with

28  respect to the services he has performed will be submitted in connection with the final-

1  approval process.

2    Plaintiff is entitled to an additional amount for the services that he has rendered as

3  a Class Representative.  Incentive awards "are not uncommon and can serve an important

4  function in promoting class action settlements," Sheppard v. Consol. Edison Co. of N.Y.,

5  Inc., 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002), and "[c]ourts routinely

6  approve incentive awards to compensate named Plaintiffs for the services they provided

7  and the risks they incurred during the course of the class action litigation."  In re S. Ohio

8  Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other grounds,

9  191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir.

10  2001) ("The district court must evaluate [incentive] awards individually, using 'relevant

11  factors includ[ing] the actions the [p]laintiffs have taken to protect the interests of the

12  class, the degree to which the class has benefited from those actions, . . . [and] the amount

13  of time and effort the Plaintiffs expended in pursuing the litigation.'") (quoting Cook v.

14  Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)).

15    The decision whether to award an incentive payment to a class representative, and

16  the size of that award, is entirely within the trial court's discretion.  See, e.g., In re Mego

17  Fin. Corp. Sec. Litig., 213 F.3d 454, 458, 462 (9th Cir. 2000).  "The criteria courts may

18  consider in determining whether to make an incentive award include:  (1) the risk to the

19  class representative in commencing suit, both financial and otherwise: (2) the notoriety

20  and personal difficulties encountered by the class representative: (3) the amount of time

21  and effort spent by the class representative; (4) the duration of the litigation and; (5) the

22  personal benefit (or lack thereof) enjoyed by the class representative as a result of the

23  litigation."  Van Vraken v. Atl. Richfield Co., 901 F. Supp. 294, 299–300 (S.D. Cal.

24  1995) (approving an award of $50,000 to a named plaintiff who did not receive a great

25  personal benefit from the common fund).

26    The purposes for which courts award incentive payments are threefold.  First,

27  incentive awards compensate class representatives for work done by them on behalf of

28  the class under a quantum meruit theory.  See Enterprise Energy Corp. v. Columbia Gas

1    Transmission Corp., 137 F.R.D. 240, 251 (S.D. Ohio 1991).  This is the same reason
2    attorneys' fees, expert fees, and other costs of litigation are generally deducted from the
3    common fund—to prevent a windfall to the class.  Second, incentive awards are used to
4    compensate class representatives for risks undertaken by them in bringing the class
5    action.  See, E.g., In re Continental Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992).
6    These risks include retaliation resulting in personal or financial harm, discrimination,
7    trouble finding employment, and significant financial risk.  See, e.g., Cook, 142 F.3d at
8    1016 (workplace retaliation); Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d
9    1185, 1220–21 (S.D. Fla. 2006) (financial retaliation); Women's Comm. for Equal
10   Employment Opportunity v. Nat'l Broad. Co., 76 F.R.D. 173, 181 (S.D.N.Y. 1977)
11   (discrimination): Glass v. UBS Fin. Servs., Inc., 2007 WL 221862 at *16 (N.D. Cal. Jan.
12   26, 2007) (trouble finding employment); Enterprise Energy Corp., 137 F.R.D. at 251
13   (significant financial risk).  Third, some courts award incentive awards to class
14   representatives in recognition of their willingness to act as a private attorney general.
15   See, e.g., In re Continental/Midlantic S'holders Litig., 1987 WL 16678 at *7 (E.D. Pa.
16   Aug. 29, 1987).

17          In light of Plaintiff's willingness to come forward with this action on behalf of
18   Defendant's employees and in light of his efforts in advancing the litigation, an award of
19   up to $7,500 is reasonable under the circumstances.  See, e.g., Cook, 142 F.3d at 1016
20   (approving an incentive award of $25,000 to a class representative); Bradburn Parent
21   Teacher Store, Inc. v. 3M (Minn. Mining and Mfg. Co.), 2007 WL 1468847 at *19 (E.D.
22   Pa. May 14, 2007) (award of $75,000 in case with $39,750,000 settlement); Glass, 2007
23   WL 221862 at *17 (award of $25,000 to each of four class representatives from
24   settlement of $45,000,000); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 28 (E.D. Pa.
25   1985) (approving an incentive award of $20,000 apiece to two class representatives).
26   Plaintiff informed counsel of his situation and of his similarity with Class Members.  In
27   furtherance of this action, Plaintiff also has expended much time with counsel, having
28   met with counsel by telephone conference on numerous occasions.  (Harris Decl. ¶ 12.)

In light of Plaintiff's time spent bringing and maintaining this action, and in light of Defendant's and Plaintiff's calculated decision to settle, Plaintiff should be awarded a reasonable payment.  As a result of his efforts, Defendant's employees will receive a gross average of thousands of dollars each.  (Harris Decl. ¶ 14.)

### D.   *Release of Claims.*

According to the Settlement:

Upon the Court's final approval of the Settlement, and except as to such rights or claims as may be created by the Settlement, Plaintiff and the Class Members (other than those who file requests for exclusion) hereby release all known and unknown claims, debts, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, or injunctive relief against Defendant and its former and present parents, subsidiaries, affiliates, divisions, and related entities, together with their current and former  officers, directors, employees, partners, shareholders, representatives and agents, and any other successors, assigns, or legal representatives (collectively, "Class Members' Released Parties") for any and all wage-and-hour claims of every nature or description, including claims for injunctive relief, related to the allegations in the operative Complaint in this Action (collectively, "Class Members' Released Claims").  These released claims include, but are not limited to, any and all known or unknown claims for: allegedly unpaid wages, including alleged overtime and minimum wages; payments for alleged meal and rest period violations; payments for alleged wage statement violations; payments for alleged failure to keep payroll records; payments for alleged failure to pay continuing wages; payments for liquidated damages, attorneys' fees and costs, any and all available penalties, including, but not limited to pay stub penalties, record keeping penalties, minimum wage penalties, meal and rest period penalties and waiting time penalties, interest, and other claims or penalties under federal and state wage-

and-hour law (Labor Code §§ 200, 201(a), 202, 203, 204, 223, 226, 226.7, 500, 510, 511, 512, 515, 1194, 1198 and IWC Wage Order No. 4-2001; FLSA, 29 U.S.C. §201 *et seq.*), up to and including the date the Court enters the order preliminarily approving this Settlement; except, however, claims under the FLSA are released only by those Class Members who submit Claim Forms pursuant to this Settlement.  The claims released by the Class Members (other than those who submit timely and valid requests for exclusion) also include, but are not limited to, all claims of the foregoing nature that arise under the California Labor Code; Business and Professions Code §§ 17200 *et seq.*; and the Labor Code Private Attorneys General Act (codified at California Labor Code §§ 2698 *et seq.*; California Industrial Welfare Commission Wage Orders; and the FLSA; and claims for interest, attorneys' fees and costs related to the  Action; provided, however, that Class Members who do not submit Claim Forms will not be releasing claims under the FLSA.  In addition, this Settlement shall result in the release by Class Members of all claims arising under the California Private Attorneys General Act of 2004 ("PAGA"), codified at California Labor Code §2698 *et seq.*, that were or could have been alleged in the Action, based on the allegations in the Action, and the Parties and counsel agree that no Class Members will be able to bring, and no recovery will be permitted for Class Members on, any such claims under PAGA that meet the definition of Class Member Released Claims.  The Parties and their counsel agree and acknowledge that the Class Members were granted additional consideration for the release of these claims (which is already part of, and not in addition to, the Gross Settlement Amount), and that it was further agreed that the amount of $25,000.00 from the Gross Settlement Amount shall be paid to the California Labor and Workforce Development Agency pursuant to this Settlement.

Class Members will also waive all rights and benefits afforded by section 1542 of the

1   California Civil Code.

2          **E.    Exclusions (Opt-Outs) and Objections.**

3          As the above makes clear, Settlement Class Members will be given an opportunity

4   to exclude themselves from (in other words, to opt out of) the Settlement, as well as an

5   opportunity to object to the Settlement.  The Notice to Class of Proposed Settlement of

6   Class Action will provide instructions concerning exclusions and objections.  Class

7   Members who wish to object to the Settlement must file a written objection within fifteen

8   days after the Motion for Final Approval of Settlement and Motion for Award of

9   Attorneys' Fees and Costs are filed.

10         **F.    PAGA Payment to the LWDA.**

11         The Settlement provides for the payment of $25,000 to the LWDA in settlement of

12  any alleged civil penalties owing to the named Plaintiff, the members of the Settlement

13  Class, and the State of California under PAGA (California Labor Code section 2698 *et*

14  *seq.*).  Further, settlement checks to Participating Class Members not negotiated within

15  180 days from their issue date shall be considered null and void and such funds resulting

16  from the failure of a Participating Class Member to timely cash his or her settlement

17  check shall be paid to the LWDA.  Civil penalties recovered as part of a proposed

18  settlement shall be approved by the Court.  <u>See</u> Cal. Lab. Code § 2699(l) ("The superior

19  court shall review and approve any penalties sought as part of a proposed settlement

20  agreement pursuant to this part.").  If approved, the payment to the LWDA will be spent

21  "for enforcement of labor laws and education of employers and employees about their

22  rights and responsibilities under [the Labor Code], to be continuously appropriated to

23  supplement and not supplant the funding to the agency for those purposes."  Cal. Lab.

24  Code § 2699(i).  The Court may approve the payment to the LWDA pursuant to the terms

25  under the Settlement without regard to whether class-action requirements have been

26  satisfied.  <u>See</u> <u>Arias v. Sup.Ct.</u> (<u>Angelo Dairy</u>), 46 Cal. 4th 969, 975 (June 29, 2009)

27  ("We hold that an employee who, on behalf of himself and other employees, sues an

28  employer under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) for

1   Labor Code violations must satisfy class action requirements, but that those requirements
2   need not be met when an employee's representative action against an employer is seeking
3   civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code,
4   § 2698 et seq).").

5        Here, the LWDA will receive, on average, nearly $100 in civil penalties for each
6   alleged aggrieved employee.  Because finding that Defendant is liable for civil penalties
7   under PAGA would require a determination that Defendant violated the underlying
8   sections of the California Labor Code, and the parties entered into this class-action
9   settlement before any such determination, Plaintiffs contend that $25,000 to the LWDA is
10  fair and adequate.  A court has authority to exercise the same discretion to assess a civil
11  penalty as the LWDA.  Cal. Lab. Code § 2699(e)(1).  Further, a court "may award a
12  lesser amount than the maximum civil penalty specified by this part if, based on the facts
13  and circumstances of the particular case, to do otherwise would result in an award that is
14  unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code §2699(e)(2).

15  **VI.    *Class-Notice Procedure.***

16       The proposed notice will satisfy all applicable requirements, including due process.
17  Proper notice, as here, will provide:  (a) the material terms of the proposed settlement; (b)
18  disclosure of any special benefit to the class representative; (c) disclosure of the
19  attorneys' fees provisions; (d) the time and place of the final approval hearing and the
20  method for objecting to the settlement; (e) an explanation regarding the procedures for
21  allocating and distributing the settlement funds; and (f) the address and phone number of
22  class counsel and the procedures for making inquiries.  Marshall v. Holiday Magic, 550
23  F.2d 1173, 1177–78 (9th Cir. 1977).  Within fifteen days following the Court's entry of
24  an order of preliminary approval, Defendant will provide to the Claims Administrator a
25  list of Class Members, and their last-known addresses, along with data indicating the
26  number of Compensable Workweeks for each Class Member.  The Claims Administrator
27  will then send a Claim Form to each Class Member via first-class mail using the most
28  current mailing-address information available.  The Claims Administrator will perform a

National Change of Address search at the outset.  If any Class Notice is returned to the Claims Administrator as undelivered before the deadline for Class Members to submit Claim Forms expires, the Claims Administrator will forward the Class Notice using all standard skip tracing devices to obtain forwarding addresses.  Any undelivered Claim Form will be re-sent within ten days after the Claims Administrator receives notice that the Form was undeliverable.

## VII.   Attorney's Fees and Costs.

The Settlement provides that Plaintiff's attorney's fees incurred in the litigation of this action shall be paid from the $683,130.00 Gross Settlement Amount.  In this regard, Plaintiff notes that the allowance or disallowance of an award to Class Counsel is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement itself.  Class Counsel will file a motion approving an award of fees and costs in conjunction with the motion for final approval of class-action settlement.  The motion approving an award of fees and costs will detail the hours expended and the costs forwarded.  At the final fairness hearing, the Court shall have the power to reallocate the fee portion of the proposed settlement to the Class for distribution.  This, it is submitted, is completely reasonable.

## VIII.  The Settlement is Fair, Reasonable, and Adequate.

"The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(c).  According to the Ninth Circuit:

> Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

1    Dunleavy, 2132 F.3d at 458 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

2    Cir. 1998).  Of course, "[i]t is the settlement taken as a whole, rather than the individual

3    component parts, that must be examined for overall fairness."  Hanlon, 150 F.3d at

4    1026.  However, certain factors may predominate in different factual contexts.  Indeed,

5    one factor may predominate over *all* the others and provide sufficient grounds for

6    approval of a settlement.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir.

7    1993).

8            *A.    The Terms of the Proposed Settlement Are Fair.*

9            Settlement is an extremely attractive option for Plaintiff and Defendant, given the

10   reasonable arguments that can be made by both sides.  In other words, litigation is always

11   uncertain, and Plaintiffs could lose at trial just as easily as they could prevail.   Plaintiff

12   contends that Defendant violated the California Labor Code by failing to provide Class

13   Members with proper and timely overtime wages.  Further, Plaintiff contends that the

14   ten-minute paid rest periods and thirty-minute unpaid meal breaks mandated by sections

15   226.7 and 512 of the California Labor Code and the IWC Wage Order were not provided.

16   Accordingly, Plaintiff contends that Defendant's employees are entitled to "one

17   additional hour of pay at [their] regular rate of compensation for each work day that [a]

18   meal or rest period [w]as not provided."  Cal. Lab. Code § 226.7(b).  In addition, Plaintiff

19   contends that Defendant willfully failed to pay in a timely fashion all wages due to those

20   Class Members whose employment with Defendant had been terminated.   Accordingly,

21   Plaintiff contends that those employees are entitled to the continuing wages specified by

22   section 203 of the California Labor Code.  Finally, Plaintiff also contends that Defendant

23   failed to issue pay stubs that contain all of the information required by the California

24   Labor Code.  Defendant vigorously disputes Plaintiff's contentions.

25           Settlement is an attractive option with respect to Plaintiff's unpaid-overtime claim

26   and meal-and-rest break claim.   Based on a review of information produced by

27   Defendant and on discussions with Defendant's counsel, Plaintiff's counsel

28   acknowledges that some may argue that the amount of unpaid overtime and/or number of

breaks missed by any given Class Member may require a rather individualized inquiry, with a result that class certification might be denied on the unpaid-overtime claim and/or meal-and-rest-break claim.  Further, Defendant claims that many Class Members executed proper meal waivers.  Settlement is also an attractive option with respect to Plaintiff's continuing-wages claim.  The California Labor Code requires that an employer pay continuing wages only if its failure to pay all wages upon termination was willful.  See Cal. Lab. Code § 203.  It is far from settled whether the failure to pay overtime wages or wages on account of foregone meal and rest breaks results in continuing-wages liability.  See Hon. Ming W. Chin, et al., California Practice Guide:  Employment Litigation ¶ 11:1464.1 (The Rutter Group 2008)  ("Employers may argue that because 'wages' and overtime pay have different sources, Lab. C. § 203's waiting time penalties for 'wages' do *not* apply to overtime pay  [See Earley v. Sup. Ct. (Washington Mut. Bank, F.A.) (2000) 79 CA4th 1420, 1430, 95 CR2d 57, 63—'An employee's right to wages and overtime compensation clearly have different sources'; see also Wilcox v. Birtwhistle (1999) 21 C4th 973, 979, 90 CR2d 260, 264—words and phrases given a particular meaning in one part of a statute must be given same meaning in other parts of the statute; Mamika v. Barca (1998) 68 CA4th 487, 493, 80 CR2d 175, 178—penalty of continued 'wages' for late payment is computed by reference to daily straight-time pay (not overtime)].") (emphasis in original).  Cf. Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an employer had deducted a setoff from an employee's final paycheck at a time when the law governing the propriety of setoffs from employees' paychecks was unclear.))  Insofar as it does not result in continuing-wages liability, the extent of Defendant's liability may be reduced.   Throughout this litigation, Defendant has denied all of Plaintiff's allegations and liability.

### B.   *Likely Duration of Further Litigation.*

This action has been pending in the court system for over half a year, and while it is pending, Defendant's employees remain uncompensated for the alleged violations of

1  state and federal labor law.  Granting approval of this class-action settlement would

2  create a settlement fund that would remedy those violations.  However, because the

3  putative Class has not been certified and because notices have not been sent out, the

4  likely duration of further litigation would at least be more than an additional year, which

5  would further delay any payment to Defendant's employees.  The money, in other words,

6  is available today, as opposed to some uncertain time, and in some uncertain amount, in

7  the future.  In light of the lengthy time necessary to litigate class actions, the prompt

8  payment through the Settlement has meaningful value to the Class even apart from the

9  contingent nature of any recovery were this case litigated to conclusion.

10            **C.**    ***The Amount Offered in the Settlement.***

11          The total settlement amount is $683,130.00.  Although this is not the amount that

12  either Plaintiff or Defendant hoped for, it does represent a compromise by the parties in

13  light of the risks and costs of further litigation.  Under the Settlement, the average gross

14  recovery for each Class Member will be approximately $2,689.49 if every Class Member

15  submitted a claim.  (Harris Decl. ¶ 14.)  Given the likelihood that not all Class Members

16  will submit claims, those who actually submit claims will likely receive a higher amount.

17  (Harris Decl. ¶ 14.)  Given the risks inherent in this case, as with all class actions,

18  Plaintiff submits that that is an entirely reasonable amount for the settlement of this

19  case—particularly in light of the fact that Defendant is a privately held entity, working in

20  a niche industry.  (Harris Decl. ¶ 14.)  In most cases, "unless the settlement is clearly

21  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

22  with uncertain results."  Nat'l Rural Telecomms. Coop v. DIRECTV, Inc., 221 F.R.D.

23  523, 526 (C.D. Cal. 2004).  Indeed, settlement is encouraged in class actions where

24  possible.  Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly

25  seems necessary to point out that there is an overriding public interest in settling and

26  quieting litigation.  This is particularly true in class action suits which are now an ever

27  increasing burden to so many federal courts and which frequently present serious

28  problems of management and expense.").

1

2

### D.     The Extent of Discovery Completed and the Stage of the Proceedings.

The parties have conducted significant informal discovery. A substantial amount of information and relevant documents have been exchanged and reviewed as a result of informal requests for production and during settlement negotiations, which began in December of 2010. (Harris Decl. ¶ 4.) The parties have conducted numerous informal interviews regarding the background of the case. (Harris Decl. ¶ 4.) In any event, regardless of whether extensive formal discovery has been conducted, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about the settlement." Dunleavy, 213 F.3d at 459 (quoting Linney, 151 F.3d at 1239).

### E.     Experience and Views of Counsel.

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted): see also Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating a proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975); Hanrahan v. Britt, 174 F.R.D. 356, 366, 368 (E.D. Pa. 1997) (finding that a presumption of correctness applies to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery).

As reflected in the Harris Declaration filed herewith, counsel for Plaintiff has substantial experience in prosecuting class actions, including actions that involve the

1  application of the California Labor Code and the FLSA.  (See Harris Decl. ¶¶ 2, 3.)

2  Although acknowledging both that some persons whose interests are aligned with those

3  of employees might feel that Defendant should pay more and that some persons whose

4  interests are aligned with those of employers might feel that Defendant should pay less,

5  Plaintiff's counsel is of the opinion that the proposed settlement represents a very

6  reasonable bargain for both sides, given the inherent risks, hazards, and expenses of

7  carrying the case through trial.  (See Harris Decl. ¶ 6.)  Defendant has reached a similar

8  conclusion.

9  ### F.    Reaction of Class Members to the Proposed Settlement.

10  The reaction of Class Members to the proposed settlement cannot be known until

11  preliminary approval is given, notice is sent out, and responses to that notice are received.

12  Of course, "[i]t is established that the absence of a large number of objections to a

13  proposed class action settlement raises a strong presumption that the terms of a proposed

14  class settlement action are favorable to the class members."  DIRECTV, 221 F.R.D. at

15  529.

16  ## IX.   Appointment of a Claims Administrator.

17  The Settlement provides for the appointment of a Claims Administrator to

18  administer the claims process.  The California-based Claims Administrator chosen by the

19  parties is Gilardi & Co., LLC, a well-established, reliable firm.  (See Harris Decl. ¶ 7, Ex.

20  2.)  In providing Notice to the Class, the Claims Administrator will follow the procedures

21  outlined in the Settlement Agreement.  That procedure is constitutionally sound and

22  constitutes the best notice practicable under the circumstances.  See Franks v. Kroger

23  Co., F.2d 1216, 1222–23 (6th Cir. 1981) (explaining that Rule 23 "provides the courts

24  with 'virtually complete discretion' in selecting the kind of notice to employ in order to

25  inform class members of a settlement hearing").

26  ## X.    Proposed Calendar.

27  The Settlement contemplates, and Plaintiff proposes, the following calendar:

28  (A)    September 23, 2011:  The Court conditionally certifies the class action,

preliminarily approves the class-action settlement, appoints the Claims Administrator, and approves the form and mailing of the Class Notice and Claim Form.

(B)    Within fifteen (15) days after entry of an order of preliminary approval, Defendant will provide to the Claims Administrator a list of Class Members and their last-known addresses.

(C)    Within fifteen (15) days after receiving the Class-Member information, the Claims Administrator will send a Claim Form to each Class Member via first-class mail using the most current mailing-address information available.

(D)    Within forty-five (45) days after the mailing of a Claim Form by the Claims Administrator, completed Claim Forms and exclusion requests must be postmarked.

(E)    At least 35 days before the hearing on Final Approval, Plaintiff files a Motion for Final Approval of the Class-Action Settlement.  Class Counsel also files a motion for fees and reimbursement of costs.  Within 15 days thereafter, Class Members may submit objections to the Settlement and/or Class Counsel's request for attorneys' fees and/or costs.

(F)    January 20, 2011:  Hearing on Motion for Final Approval of the Class-Action Settlement and Motion for Award of Attorneys' Fees and Costs.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

1

*XI.    Conclusion.*

It is respectfully submitted that the settlement is fair, reasonable, and adequate. The Court should grant preliminary approval of the Settlement, grant conditional certification of the Class, confirm Alan Harris and Abigail Treanor of Harris & Ruble as Class Counsel, confirm Konstantinos Moshogiannis as Class Representative, appoint Gilardi & Co., LLC as the Claims Administrator, approve the form and means of giving notice, and should set the matter for a final approval hearing.

DATED:  May 6, 2011                                HARRIS & RUBLE

                                                              /s/
                                                   _____
                                                   Alan Harris
                                                   Abigail Treanor
                                                   *Attorneys for Plaintiff*