Alan Harris (SBN 146079)
Abigail Treanor (SBN 228610)
HARRIS & RUBLE
6424 Santa Monica Blvd.
Los Angeles, California 90038
Telephone:  323.962.3777
Facsimile:  323.962.3004
aharris@harrisandruble.com
atreanor@harrisandruble.com

Attorneys for Plaintiff
KONSTANTINOS MOSHOGIANNIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KONSTANTINOS MOSHOGIANNIS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>SECURITY CONSULTANTS GROUP, INC., a Tennessee Corporation, and Doe One through and including Doe Ten,<br><br>                    Defendants. | Case No:  CV-10-05971 EJD<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Assigned to the Honorable Edward J. Davila, 280 S. 1st Street, Courtroom 4, 5th Floor, San Jose, CA, 95113*<br><br>Date:  June 15, 2012<br>Time:  2:00 p.m.<br>Court:  Courtroom 4, 5th Floor<br><br>Complaint filed November 5, 2010 |

1    TO EACH PARTY AND TO COUNSEL FOR EACH PARTY OF RECORD:

2   NOTICE IS HEREBY GIVEN that, on June 15, 2012, at 2:00 p.m., or as soon thereafter

3   as counsel may be heard, in Courtroom 4 of the above-entitled Court located at 280 South

4   First Street, San Jose, California 95113, Plaintiff Konstantinos Moshogiannis

5   ("Moshogiannis" or "Plaintiff") will move for an order granting final approval of the

6   class-action settlement in this action.  The Motion will be made and based upon this

7   Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the

8   Declaration of Alan Harris in Support of Plaintiff's Motion for Final Approval of Class-

9   Action Settlement ("Harris Declaration") filed herewith; the Declaration of Markham

10   Sherwood (Claims Administrator) filed herewith (attached as an Exhibit to the Harris

11   Declaration); the Declaration of Moshogiannis filed herewith; and all of the pleadings,

12   papers, and documents contained in the file of the within action.

13    The parties have met and conferred prior to the filing of this Motion.  The defense

14   has indicated it will not oppose the filing or substance of this Motion.

15    This Motion is made pursuant to the February 8, 2012, Order Granting Plaintiff's

16   Motion for Conditional Settlement Class Certification and Preliminary Approval of Class

17   Action Settlement, which sets the fairness hearing in the above-captioned matter for June

18   15, 2012.

19   DATED:  May 8, 2012                              HARRIS & RUBLE

20   _____  /s/  _____

21                                                          Alan Harris
                                                            Abigail Treanor
22                                                          *Attorneys for Plaintiff*

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   Introduction...................................................................................................1

II.  Procedural Background and Summary of Case.............................................2

III. Conditional Certification of the Settlement Class.........................................3

IV.  Summary of the Settlement. .........................................................................3

    A.   The Settlement Fund and the Payment of Claims................................3
    B.   Tax Implications...................................................................................4
    C.   Attorney's Fees and Reimbursement of Costs.....................................4
    D.   Class Members' Release of Claims......................................................5

V.   The Provision of Notice to Class Members...................................................7

VI.  Plaintiff Is Entitled To An Enhancement Payment. ......................................8

VII. The Settlement Is Fair, Reasonable, and Adequate.....................................11

    A.   The Strength of Plaintiff's Case.........................................................12
    B.   The Likely Duration of Further Litigation. ........................................13
    C.   The Risk of Maintaining Class Status Through Trial. ......................14
    D.   The Amount Offered in the Settlement...............................................15
    E.   The Extent of Discovery Completed and the Stage of
        Proceedings. ......................................................................................16
    F.   The Experience and Views of Counsel. .............................................17
    G.   The Reaction of Class Members to the Proposed Settlement............18

VIII. Conclusion. ................................................................................................19

1

# TABLE OF AUTHORITIES

2

## CASES

3

Barnhill v. Robert Saunders & Co.
 125 Cal. App. 3d 1 (1981) ......................................................13

4

Bell v. Farmers Ins. Exch.
 115 Cal. App. 4th 715 (2004) ...................................................9

5

6

Bogosian v. Gulf Oil Corp.
 621 F. Supp. 27 (E.D. Pa. 1985) ..............................................10

7

Boyd v. Cechtle Corp.
 485 F. Supp. 610 (N.D. Cal. 1979) ...........................................18

8

Brown v. Ticor Title, Inc.
 982 F. 2d 386 (9th Cir. 1992) ....................................................7

9

Class Pls. v. Seattle
 955 F.2d 1268 (9th Cir. 1992) ..................................................11

10

11

Colesberry v. Ruiz Food Products, Inc.
 2006 WL 1875444 (E.D. Cal. 2006)...........................................7

12

Cook v. Niedert
 142 F.3d 1004 (7th Cir. 1997) ..................................................10

13

Cotton v. Hinton
 559 F.2d 1326 (5th Cir. 1977) ..................................................17

14

Crab Addision, Inc. v. Sup. Ct.
 169 Cal. App. 4th 958 (2008) ...................................................10

15

16

Dunleavy v. Nadler
 213 F.3d 454 (9th Cir. 2000) ....................................11, 15, 17

17

Earley v. Superior Court
 79 Cal. App. 4th 1420 (2000) ...................................11, 15, 17

18

Eisen v. Carlisle & Jacquelin
 417 U.S. 156 (1974)..................................................................7

19

Flinn v. FMC Corp.
 528 F.2d 1169 (4th Cir.1975) ...................................................17

20

Franks v. Kroger Co.
 649 F. 2d 1216 (6th Cir. 1981) ...................................................7

21

22

Hanlon v. Chrysler Corp.
 150 F.3d 1011 (9th Cir. 1998) ..................................................11

23

In re Activision Sec. Litig.
 723 F. Supp. 1373 (N.D. Cal. 1989).............................................4

24

In re Anthracite Coal Antitrust Litigation
 79 F.R.D. 707 (M.D. Pa. 1978) .................................................18

25

26

In re Austrian and German Bank Holocaust Litig.
 80 F.Supp.2d 164 (S.D.N.Y. 2000) ...........................................17

27

In re Cendant Corp. Litig.
 264 F. 3d 201 (3rd Cir. 2001) ...................................................16

28

In re Gypsum Antitrust Cases
   565 F. 2d 1123 (9th Cir. 1977) .................................................................7

In re S. Ohio Correctional Facility
   175 F.R.D. 270 (S.D. Ohio 1997) ............................................................9

In re Warfarin Sodium Antitrust Litig.
   212 F.R.D. 231 (D. Del. 2002) ..........................................................14, 16

Linney v. Cellular Alaska P'ship
   151 F.3d 1011 (9th Cir. 1998) ...........................................................11, 17

Mamika v. Barca
   68 Cal. App. 4th 487, 80 CR2d 175 (1998)............................................13

Montgomery v. Beneficial Consumer Disc. Co.
   2005 WL 497776 (E.D. Pa. 2005) ............................................................8

Murphy v. Kenneth Cole Productions, Inc.
   40 Cal. 4th 1094 (2007) .........................................................................15

Nat'l RUral Telecomm. Coop. v. DirecTV, Inc.
   221 F.R.D. 523 (C.D. Cal. 2004)............................................ 11, 14, 17, 18

Nichols v. Smithkline Beecham Corp.
   2005 WL 950616 (E.D. Pa. 2005) ..........................................................16

Officers for Justice v. Civil Servs. Comm'n of the City and County of San
Francisco
   688 F.2d 615 (9th Cir. 1982) .............................................................11, 18

Oppenlander v. Standard Oil Co.
   64 F.R.D. 597 (D. Colo. 1974) ...............................................................14

Pacific Enters. Sec. Litig.
   47 F.3d 373 (9th Cir.1995) .....................................................................17

Rodriguez v. West Publishing Corp.
   563 F.3d 948 (9th Cir. 2009) ..................................................................15

Romanelli v. Michigan Indian Empl. & Training Servs.
   191 F.3d 453 (6th Cir. 1999) ....................................................................9

Sheppard v. Consol. Edison Co. of N.Y., Inc.,
   2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. 2002)........................................9

Staton v. Boeing Co.
   327 F.3d 938 (9th Cir. 2001) ....................................................................9

Torrisi v. Tucson Elec. Power Co.
   8 F.3d 1370 (9th Cir. 1993) ....................................................................12

Van Bronkhorst v. Safeco Corp.
   529 F.2d 943 (9th Cir. 1976) .............................................................14, 15

Van Vraken v. Atlantic Richfield Co.
   901 F. Supp. 294 (N.D. Cal. 1995) .........................................................10

Wal-Mart Stores, Inc. v. Dukes
   131 S. Ct. 2541 (June 20, 2011) .............................................................14

Wang v. Chinese Daily News, Inc.
   231 F.R.D. 602 (C.D. Cal. 2005)............................................................10

Wilcox v. Birtwhistle
   21 Cal. 4th 973, 90 CR2d 260 (1999).....................................................13

1

Zimmer Paper Prods., Inc. v. Berger & Montague,P.C.
    758 F. 2d 86 (3d Cir. 1985) ...............................................................8

2

**STATUTES**

3

29 U.S.C. § 201 .....................................................................................2, 5

4

29 U.S.C. § 216 ........................................................................................2

5

Cal. Civ. Proc. Code § 1542 ...................................................................6

Cal. Lab. Code § 203 ...............................................................12, 13, 15

6

Cal. Lab. Code § 226 ..............................................................................15

7

Cal. Lab. Code § 226.7 ...........................................................................12

8

Cal. Lab. Code § 226.7 ...........................................................................12

Cal. Lab. Code § 2698 . ...........................................................................6

9

Cal. Lab. Code § 2699 ............................................................................2

10

11

**RULES**

Fed. R. Civ. P. 23 ..........................................................................2, 3, 8, 11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiff Konstantinos Moshogiannis ("Plaintiff" or "Moshogiannis") respectfully requests this Court grant final approval of the $683,130 class-action settlement negotiated with Defendant Security Consultants Group, Inc. ("Defendant" or "SCG"). The Class consists of current and former employees of Defendant who worked as security officers. As a result of the settlement, participating class members should receive a gross recovery of over $4,000 each, on average. If the requested fees and other costs are approved, each participant should receive an average payment of $2,217.31.[1] On February 8, 2012, this Court issued the Order Granting Plaintiff's Motion for Conditional Settlement Class Certification and Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Notice now having been provided to the 258 members of the Settlement Class[2] pursuant to the terms of the Preliminary Approval Order, (see Decl. of Markham Sherwood [Claims Administrator] ("Sherwood Decl.") ¶ 3), and Class Members having had an opportunity to either participate in or exclude themselves from the settlement, Plaintiff now moves for an order granting final approval of the Class Action Settlement Agreement ("Settlement") reached between the parties.

As explained more fully below, of the 258 members of the Settlement Class notified, 170 have returned Claim Forms, representing approximately a 66% return rate. (Sherwood Decl. ¶ 9.)   It is estimated that the average *gross* payment to members of the Settlement Class who submitted a claim will be some $4,018 each. (Harris Decl. ¶ 10.) No class members have elected to opt out of the Settlement. (See Sherwood Decl. ¶ 11.)

---

[1] This assumes that from the $683,130 settlement amount, the court awards (1) attorneys' fees of $204,939 in full, (2) attorneys' costs of $2,196.77 in full, (3) enhancement payment of $7,500 in full, (4) $25,000 for PAGA payment to LWDA, (5) 0.3% FUTA Credit Reduction (i.e. employer's payroll taxes) estimated to be $46,552.33, and (6) claims administration costs of no more than $20,000. (Harris Decl. ¶ 10, n. 2.)

[2] The Settlement Class, which was conditionally certified, for settlement purposes only, is described as "All natural persons employed by Defendant Security Consultants Group, Inc. in California as security personnel during the time from January 1, 2007, through the date of preliminary approval of this Settlement [February 8, 2012]." (Preliminary Approval Order at 2:23–27; 11:5–6.)

1   Not a single objection has been filed.  (Sherwood Decl. ¶ 11; Harris Decl. ¶ 11.)  Under

2   the circumstances, Plaintiff, who is represented by experienced Class Counsel, submit

3   that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement

4   Class, particularly since there have been no opt outs or objections to the Settlement.  The

5   Motion should therefore be granted.

6   **II.     PROCEDURAL BACKGROUND AND SUMMARY OF CASE.**

7           This action was commenced as a putative class action on November 5, 2010, in the

8   Superior Court of California, County of Santa Clara.  On December 29, 2010, Defendant

9   removed the action to the United States District Court for the Northern District of

10  California.  On March 7, 2011, Plaintiff filed the First Amended Complaint ("FAC").  In

11  the FAC, Plaintiff alleges Defendant violated sections 201, 202, 203, 226, 226.7, and

12  1194, Industrial Welfare Commission Wage Order 4, and the Fair Labor Standards Act

13  ("FLSA"), 29 U.S.C. § 201 *et seq.*[3]  The FAC also included a claim for civil penalties

14  under California Labor Code section 2699, the Private Attorneys General Act ("PAGA").

15          Immediately upon service of the Summons and Complaint, in December of 2010,

16  the parties began discussing settlement, exchanging relevant employment and policy

17  documents in order to conduct meaningful settlement negotiations.  The parties

18  negotiated the terms of the Settlement over a four-month period.  The parties entered into

19  the Settlement that was presented to the Court for preliminary approval.  On February 8,

20  2012, the Court granted preliminary approval of the Settlement.  (See generally

21  Preliminary Approval Order.)  In the Preliminary Approval Order, the Court:  (1)

22  conditionally certified the Settlement Class as a class action under Federal Rule of Civil

23  Procedure 23(a) and 23(b)(3) and 29 U.S.C. § 216(b); (2) preliminarily determined that

24  the Settlement is fair, reasonable, and adequate pursuant to Federal Rule of Civil

25  Procedure 23(e); (3) approved Moshogiannis to act as the class representative for

26  _____

    [3] Defendant has asserted that it paid Plaintiff and the Class properly.  Defendant

27  denies all of Plaintiff's substantive allegations and that none of Plaintiff's claims have
    any merit.  Nevertheless, Defendant agrees that settlement strikes a fair balance as to

28  Plaintiff's claims in way that would be impossible, or at least impracticably expensive, to
    litigate individually.

settlement purposes only; (4) appointed Alan Harris and Abigail Treanor of Harris & Ruble as class counsel pursuant to Federal Rule of Civil Procedure 23(g); (5) approved Gilardi & Co. LLC to act as claims administrator for settlement purposes; (6) approved the content of the Notice of Claim Form pursuant to subsections Federal Rule of Civil Procedure 23(c)(2)(B) and (e); and (7) set the date for the final fairness hearing for June 15, 2012, at 2:00 p.m.  (Preliminary Approval Order at 11:2–26.)

## III.  CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS.

On February 8, 2012, the Court conditionally certified the Settlement Class. (Preliminary Approval Order at 11:5–6.)  There are 258 members of the Settlement Class. Of the 258 Class Members, 170 filed timely Claim Forms.  (Sherwood Decl. ¶ 9.)  No individuals have filed requests for exclusion from the Settlement.  (Sherwood Decl. ¶ 10.) No objections have been filed.  (Sherwood Decl. ¶ 11; Harris Decl. ¶ 11.)

## IV.  SUMMARY OF THE SETTLEMENT.

### A.  The Settlement Fund and the Payment of Claims.

The total settlement amount to be paid by Defendant is $683,130.  No portion of the settlement amount will revert to Defendant.  Under the settlement, the "Net Settlement Amount" or "NSA" is computed by deducting from $683,130  reasonable attorney's fees and costs of Class Counsel (estimated to be $204,939 and to be determined by the Court);[4] a reasonable enhancement fee to the named Plaintiff for his services as Class Representative (estimated to be $7,500 and to be determined by the Court); a payment to the Claims Administrator for its costs and fees (estimated to be $20,000 and to be determined by the Court); a $25,000 payment to the Labor & Workforce Development Agency ("LWDA") (to be approved by the Court); and Defendant's payroll taxes on payments to class members deemed to be paid for unpaid wages. The NSA will be distributed to participating Class members.[5]  Based on the

---

[4] Plaintiffs' Counsel filed a Motion for Award of Attorneys' Fees and Reimbursement of Costs on March 9, 2012.
[5] The amount payable to a class member from the Net Settlement Amount is to be calculated by adding together an "Initial Calculation Amount" and a "Supplemental Calculation Amount," if any. The "Initial Calculation Amount" is determined by first

number of claims filed, the *gross* payments to participating class members is approximately $4,018 each, on average.  (Harris Decl. ¶ 10.)  If the Court approves the attorneys' fees and other requested payments, Class Members shall each receive approximately $2,217.31.

### B.    Tax Implications.

As explained in the Settlement, the Parties agree that 100% of all payments to participating Class Members will be treated as wages subject to W-2 reporting. Therefore, normal payroll taxes and withholdings will be deducted pursuant to state and federal law, and all required payroll contributions will be made on these amounts.  SCG's payroll taxes as the employer will be deducted from the Gross Settlement Amount and the portions paid for withholdings (including FICA and FUTA) will be determined by the Claims Administrator. The employee's portion of the payroll taxes shall be deducted from the individual settlement amounts of the participating Class Members and participating Class Members will be responsible for correctly characterizing this compensation for tax purposes and paying any taxes owing.

### C.    Attorney's Fees and Reimbursement of Costs.

Class Counsel is requesting 30% of the total settlement amount, or $204,939, in attorney's fees, and $2,196.77 in costs.  The support for the request for fees and reimbursement of costs is the subject of a separate Motion, set for hearing concurrently with this Motion, and the payment of this sum will extinguish all claims for fees incurred for all work performed by Plaintiff's counsel in this case from its inception to its

---

dividing the Net Settlement Amount by the total number of compensable workweeks for the entire class and then multiplying the dollar value per compensable workweek by the number of compensable workweeks worked by each participating class member. If not all class members submit timely and valid claims, a Supplemental Calculation Amount will be determined for all participating class members by first subtracting the total Initial Calculation Amount for all participating class members from the Net Settlement Amount, dividing the resulting figure by the total number of compensable workweeks worked by participating class members, and then multiplying the individual class member's number of compensable workweeks by the supplemental amount per work week.  (Preliminary Approval Order at 3:9–19.)

conclusion in the coming months.[6]

**D.      Class Members' Release of Claims.**

According to the Settlement:

Upon the Court's final approval of the Settlement, and except as to such rights or claims as may be created by the Settlement, Plaintiff and the Class Members (other than those who file requests for exclusion) hereby release all known and unknown claims, debts, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, or injunctive relief against Defendant and its former and present parents, subsidiaries, affiliates, divisions, and related entities, together with their current and former  officers, directors, employees, partners, shareholders, representatives and agents, and any other successors, assigns, or legal representatives (collectively, "Class Members' Released Parties") for any and all wage-and-hour claims of every nature or description, including claims for injunctive relief, related to the allegations in the operative Complaint in this Action (collectively, "Class Members' Released Claims").  These released claims include, but are not limited to, any and all known or unknown claims for: allegedly unpaid wages, including alleged overtime and minimum wages; payments for alleged meal and rest period violations; payments for alleged wage statement violations; payments for alleged failure to keep payroll records; payments for alleged failure to pay continuing wages; payments for liquidated damages, attorneys' fees and costs, any and all available penalties, including, but not limited to pay stub penalties, record keeping penalties, minimum wage penalties, meal and rest period penalties and waiting time penalties, interest, and other claims or penalties under federal and state wage-and-hour law (Labor Code §§ 200, 201(a), 202, 203, 204, 223, 226, 226.7,

---

[6] Suffice it to say that the contemplated fee award is reasonable.  In re Activision Sec. Litig., 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989) (finding that, in most cases, the benchmark is thirty percent and that an award of thirty percent is substantially justified).

500, 510, 511, 512, 515, 1194, 1198 and IWC Wage Order No. 4-2001;
FLSA, 29 U.S.C. §201 *et seq.*), up to and including the date the Court enters
the order preliminarily approving this Settlement; except, however, claims
under the FLSA are released only by those Class Members who submit Claim
Forms pursuant to this Settlement.  The claims released by the Class
Members (other than those who submit timely and valid requests for
exclusion) also include, but are not limited to, all claims of the foregoing
nature that arise under the California Labor Code; Business and Professions
Code §§ 17200 *et seq.*; and the Labor Code Private Attorneys General Act
(codified at California Labor Code §§ 2698 *et seq.*; California Industrial
Welfare Commission Wage Orders; and the FLSA; and claims for interest,
attorneys' fees and costs related to the  Action; provided, however, that Class
Members who do not submit Claim Forms will not be releasing claims under
the FLSA.  In addition, this Settlement shall result in the release by Class
Members of all claims arising under the California Private Attorneys General
Act of 2004 ("PAGA"), codified at California Labor Code §2698 *et seq.*, that
were or could have been alleged in the Action, based on the allegations in the
Action, and the Parties and counsel agree that no Class Members will be able
to bring, and no recovery will be permitted for Class Members on, any such
claims under PAGA that meet the definition of Class Member Released
Claims.  The Parties and their counsel agree and acknowledge that the Class
Members were granted additional consideration for the release of these
claims (which is already part of, and not in addition to, the Gross Settlement
Amount), and that it was further agreed that the amount of $25,000.00 from
the Gross Settlement Amount shall be paid to the California Labor and
Workforce Development Agency pursuant to this Settlement.

Class Members will also waive all rights and benefits afforded by section 1542 of the
California Civil Code.

## V.    THE PROVISION OF NOTICE TO CLASS MEMBERS.

Pursuant to the Preliminary Approval Order, on March 9, 2012, the Claims Administrator mailed Notice Packets consisting of the Class Notice and Claim Form to the 258 members of the Class.  (Sherwood Decl. ¶ 3.)  The Class Members were given until April 23, 2012, to submit Claim Forms.  (Sherwood Decl. ¶ 9.)   Because of the Claims Administrator's efforts to find updated addresses, including use of the National Change of Address system, Class Counsel believes that the overwhelming majority of Settlement Class Members received actual notice either by mail or by word-of-mouth.

The Notice informed Class Members of their opportunity to object to the Settlement and to be heard at the Final Settlement Hearing.  (See Sherwood Decl., Ex. A.)  Such notice satisfies the due process requirements of the Fifth Amendment.  Brown v. Ticor Title Inc., 982 F. 2d 386, 392 (9th Cir. 1992).  The Preliminary Approval Order sanctioned the procedures for Notice, as well as the form of the Notice.  The form of such an order is within this Court's discretion.  See In re Gypsum Antitrust Cases, 565 F. 2d 1123, 1127 (9th Cir. 1977) ("Rule 23(d)(2), of course, does not provide for a specific manner of notice or the form of the notice. These are matters left to the court's discretion.").  The Parties provided sufficient notice to Class Members, and the methodology by which it was provided meets all requirements for notice in a class action settlement.[7]

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175–76 (1974).  "Rule 23(e) gives the Court 'virtually complete'

---

[7] Proper notice should provide: (a) the material terms of the proposed settlement; (b) disclosure of any special benefit to the class representatives; (c) disclosure of the attorneys' fees provisions; (d) the time and place of the final approval hearing and the method for objecting to the settlement; (e) an explanation regarding the procedures for allocating and distributing the settlement funds; and (f) the address and phone number of class counsel and the procedures for making inquiries. See Marshall v. Holiday Magic, 550 F.2d at 1178.  Here, the Class Notice provided all of the required information.  (See Sherwood Decl. Ex. A.)

discretion as to the manner of service of settlement notice." <u>Colesberry v. Ruiz Food Products, Inc.</u>, 2006 WL 1875444, at *7 (E.D. Cal. 2006) (citing <u>Franks v. Kroger Co.</u>, 649 F. 2d 1216, 1222–23 (6th Cir. 1981)).  The procedures used for providing notice in this case satisfy the Federal Rules and due process requirements. <u>See</u>, <u>e.g.</u>, <u>Silber v. Mobon</u>, 18 F. 33 1449, 1452–54 (9th Cir. 1994) (approving notice sent by first class mail as the "best notice practicable"); <u>Zimmer Paper Prods., Inc. v. Berger & Montague,P.C.</u>, 758 F. 2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the Notice requirement of both Fed. R. Civ. 23 and the due process clause.") (citations omitted); <u>Montgomery v. Beneficial Consumer Disc. Co.</u>, 2005 WL 497776, at * 6 (E.D. Pa. 2005) (individual mailing accompanied by publication in USA Today was best practicable notice under the circumstances; "[d]ue process does not require actual notice, but rather a good faith effort to provide actual notice") (quoting Alba Conte and Herbert B. Newberg, <u>Newberg on Class Actions</u> § 11:53 (4th ed. 2002) (hereafter "<u>Newberg</u>").

Of the 258 Notice Packets mailed, only 11 were returned as undeliverable. (Sherwood Decl. ¶ 5.) The Claims Administrator was able to find updated addresses for 9 of the 11 that were returned undeliverable and those Class Members were re-mailed Notice Packets.  (Sherwood Decl. ¶ 5.)  Again, 170 members of the Class submitted Claim Forms, representing approximately 66 % of the Class.  (<u>See</u> Sherwood Decl. ¶ 9.) No members have filed requests for exclusion.  (Sherwood Decl. ¶ 10.)  No objections have been received.  (Sherwood Decl. ¶ 11; Harris Decl. ¶ 11.)  The Court may thus find that the notice in this case and the notice methodology are the best practicable notice and meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.[8]

## VI.    PLAINTIFF IS ENTITLED TO AN ENHANCEMENT PAYMENT.

---

[8] Prior to the hearing on final approval, Plaintiff's counsel will submit to the Court a declaration supplementing any additional Claim Forms, request for exclusion, and if applicable, objections that are received after the filing of this Motion.

1    On February 8, 2012, this Court approved Konstantinos Moshogiannis as the

2  representative of the settlement Class.  (Preliminary Approval Order at 11:9–10.)  The

3  Settlement provides:

4       Subject to Court approval and the execution of a general release in favor of

5       Defendant [], Defendant agrees to pay Class Representative Konstantinos

6       Moshogiannis a service payment in the amount of $7,500.00, to be taken

7       from the Gross Settlement Amount, as an enhancement for his service as

8       Class Representative, in addition to any payment he may otherwise receive

9       as a Class Member.  Plaintiff agrees that the enhancement is also in

10      consideration for a full and complete settlement of all of Plaintiff's claims,

11      known or unknown, arising from any claimed violation of statute, common

12      law, or contract or tort, concerning conduct (including alleged omissions)

13      occurring between Plaintiff and Defendant through the Effective Date of the

14      Settlement, a release far broader in scope than the release applicable to the

15      rest of the Class. Defendant will not oppose Plaintiff's request for an

16      enhancement award in this amount of $7,500.00.

17  (Settlement ¶ 24.)

18      Plaintiff's "enhancement" payment is entirely reasonable as Plaintiff is entitled to

19  this additional amount for the services he has rendered as Class Representative.  See Bell

20  v. Farmers Ins. Exch., 115 Cal. App. 4th 715, 726 (2004) (affirming an order for "service

21  payments to the five named plaintiffs compensating them for their efforts in bringing

22  suit").  Incentive awards "are not uncommon and can serve an important function in

23  promoting class action settlements," Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002

24  U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y. 2002), and "[c]ourts routinely approve

25  incentive awards to compensate named Plaintiffs for the services they provided and the

26  risks they incurred during the course of the class action litigation."  In re S. Ohio

27  Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997), reversed on other grounds,

28  191 F.3d 453 (6th Cir. 1999).  See also Staton v. Boeing Co., 327 F.3d 938, 100 (9th Cir.

2001) ("The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the [p]laintiffs have taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . [and] the amount of time and effort the Plaintiffs expended in pursuing the litigation.'") (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1997)).

In light of Plaintiff's willingness to come forward with this action on behalf of a Class of current and former security officers employed by Defendant, a $7,500 enhancement award is reasonable. See, e.g., Cook, 142 F.3d at 1016 (approving an incentive award of $25,000 to a class representative); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 28 (E.D. Pa. 1985) (approving an incentive award of $20,000 apiece to two class representatives).

Enhancement awards play an important role in actions against employers.  Here, Plaintiff asserted claims which may have never been brought.  See Crab Addison, Inc. v. Sup. Ct., 169 Cal. App. 4th 958, 971 (2008) ("Current employees suing their employers run a greater risk of retaliation . . . For them, individual litigation may not be a viable option . . . . [In addition], employees may be unaware of the violation of their rights and their right to sue.") It is appropriate to provide a payment to class representatives for his or her services to the class. Van Vraken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 614 (C.D. Cal. 2005) ("Proceeding by means of a class action avoids subjecting each employee to the risks associated with challenging an employer"); Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 32 (E.D. Pa. 1985).

In furtherance of this action, Plaintiff was willing to come forward with the litigation on behalf of the absent Class of employees, Plaintiff informed counsel of his situation, and provided counsel with facts, details, and decision-making which eventually culminated into the Settlement.  The Declaration of Konstantinos Moshogiannis detailing his efforts and participation in the litigation of this case is filed herewith.  As a result of Plaintiff's efforts, claimants will receive payments of thousands of dollars each, on

1  average, for alleged violations of the California Labor Code and this Court should grant

2  him an enhancement award.

3  **VII.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

4          "The court may approve a settlement . . . that would bind class members only after

5  a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed.

6  R. Civ. P. 23(e)(1)(c).  <u>See also</u> <u>Class Pls. v. Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992)

7  (stating that class-action settlements should be approved if they are "fundamentally fair,

8  adequate and reasonable.").  According to the Ninth Circuit:

9        Assessing a settlement proposal requires a district court to balance a number of

10       factors:  the strength of Plaintiffs' case; the risk, expense, complexity, and likely

11       duration of further litigation; the risk of maintaining a class action status

12       throughout the trial; the amount offered in the settlement; the extent of discovery

13       completed and the stage of the proceedings; the experience and views of

14       counsel; . . . and the reaction of the class members to the proposed settlement.

15  <u>Dunleavy v. Nadler</u>, 213 F.3d 454, 458 (9th Cir. 2000) (citing <u>Hanlon v. Chrysler Corp.</u>,

16  150 F.3d 1011, 1026 (9th Cir. 1998); <u>see</u> <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d

17  1011, 1026 (9th Cir. 1998); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir.

18  1998); <u>Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.</u>, 221 F.R.D. 523, 525–26 (C.D.

19  Cal. 2004).  In the Ninth Circuit, a court affords a presumption of fairness to a settlement,

20  if: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3)

21  the proponents of the settlement are experienced; and (4) only a small fraction of the

22  class objected." <u>Young v. Polo Retail</u>, 2006 WL 3 050861 at *5 (N.D. Cal. 2006);

23  <u>Newberg</u> at § 11.41.  Here, there are no objections.  (Sherwood Decl. ¶ 11; Harris Decl. ¶

24  11.)

25          "The relative degree of importance to be attached to any particular factor depends

26  upon and is dictated by the nature of the claims advanced, the types of relief sought, and

27  the unique facts and circumstances presented by each individual case," <u>Officers for</u>

28  <u>Justice v. Civil Servs. Comm'n of the City and County of San Francisco</u>, 688 F.2d 615,

625 (9th Cir. 1982), and "district courts have wide discretion in assessing the weight and applicability of each factor," 5 James William Moore et al., Moore's Federal Practice § 23.85(2)(a) (3d ed. 2003). See also Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993). As a matter of fact, all factors do not necessarily apply in every case, and, under certain circumstances, the presence of a single factor alone may provide sufficient grounds for court approval. Id. In the situation presently before the Court, however, every factor cuts in favor of approval. Accordingly, the Court should conclude that the settlement is fair, reasonable, and adequate.

### A.  The Strength of Plaintiff's Case.

Settlement is an extremely attractive option for Plaintiff and Defendant, given the reasonable arguments that can be made by both sides. In other words, litigation is always uncertain, and Plaintiff could lose at trial just as easily as he could prevail. Plaintiff contends that Defendant violated the California Labor Code by failing to provide Class Members with proper and timely overtime wages. Further, Plaintiff contends that the ten-minute paid rest periods and thirty-minute unpaid meal breaks mandated by sections 226.7 and 512 of the California Labor Code and the IWC Wage Order were not provided. Accordingly, Plaintiff contends that Defendant's employees are entitled to "one additional hour of pay at [their] regular rate of compensation for each work day that [a] meal or rest period [w]as not provided." Cal. Lab. Code § 226.7(b). In addition, Plaintiff contends that Defendant willfully failed to pay in a timely fashion all wages due to those Class Members whose employment with Defendant had been terminated. Accordingly, Plaintiff contends that those employees are entitled to the continuing wages specified by section 203 of the California Labor Code. Finally, Plaintiff also contends that Defendant failed to issue pay stubs that contain all of the information required by the California Labor Code. Defendant vigorously disputes Plaintiff's contentions.

Settlement is an attractive option with respect to Plaintiff's unpaid-overtime claim and meal-and-rest break claim. Based on a review of information produced by Defendant and on discussions with Defendant's counsel, Plaintiff's counsel acknowledges that some

1    may argue that the amount of unpaid overtime and/or number of breaks missed by any

2    given Class Member may require a rather individualized inquiry, with a result that class

3    certification might be denied on the unpaid-overtime claim and/or meal-and-rest-break

4    claim.  Further, Defendant argues that many Class Members executed proper meal

5    waivers.  Settlement is also an attractive option with respect to Plaintiff's continuing-

6    wages claim.  The California Labor Code requires that an employer pay continuing wages

7    only if its failure to pay all wages upon termination was willful.  See Cal. Lab. Code

8    § 203.  It is far from settled whether the failure to pay overtime wages or wages on

9    account of foregone meal and rest breaks results in continuing-wages liability.[9]  Insofar

10   as it does not result in continuing-wages liability, the extent of Defendant's liability may

11   be reduced.

12       Throughout this litigation, Defendant has denied all of Plaintiff's substantive

13   allegations and liability.

14           **B.     The Likely Duration of Further Litigation.**

15       This action has been pending in the court system for a year and a half, and

16   Defendant's employees still remain uncompensated for the alleged overtime and other

17   labor-law violations.  Granting final approval of this class-action settlement would create

18   a settlement fund that would remedy those violations.  In fact, participating Class

19   Members will look to receive gross payments, on average, of approximately $4,018.

20   (Harris Decl. ¶ 10.)  In the absence of final approval of the settlement, the likely duration

21

22       [9] See Hon. Ming W. Chin, et al., California Practice Guide:  Employment Litigation
     ¶ 11:1464.1 (The Rutter Group 2008)  ("Employers may argue that because 'wages' and

23   overtime pay have different sources, Lab. C. § 203's waiting time penalties for 'wages'
     do not apply to overtime pay  [See Earley v. Sup. Ct. (Washington Mut. Bank, F.A.)

24   (2000) 79 Cal. A4th 1420, 1430, 95 CR2d 57, 63—'An employee's right to wages and
     overtime compensation clearly have different sources'; see also Wilcox v. Birtwhistle

25   (1999) 21 C4th 973, 979, 90 CR2d 260, 264—words and phrases given a particular
     meaning in one part of a statute must be given same meaning in other parts of the statute;

26   Mamika v. Barca (1998) 68 CA4th 487, 493, 80 CR2d 175, 178—penalty of continued
     'wages' for late payment is computed by reference to daily straight-time pay (not

27   overtime)]." (emphasis in original).  Cf. Barnhill v. Robert Saunders & Co., 125 Cal.
     App. 3d 1, 7 (1981) (explaining that liability under section 203 is improper where an

28   employer had deducted a setoff from an employee's final paycheck at a time when the
     law governing the propriety of setoffs from employees' paychecks was unclear).)

1   of further litigation of this action is in excess of a year.  As courts have explained, "unless

2   [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

3   and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop., 221

4   F.R.D. at 526.  Indeed, settlement is encouraged by courts when possible.  E.g., Van

5   Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems

6   necessary to point out that there is an overriding public interest in settling and quieting

7   litigation.  This is particularly true in class action suits which are now an ever increasing

8   burden to so many federal courts and which frequently present serious problems of

9   management and expense.").  Given these considerations, and in light of the substantial

10  amounts to be provided to participating Class Members, the Court should grant final

11  approval of the settlement.

12         **C.**     **The Risk of Maintaining Class Status Through Trial.**

13         With respect to the risk of maintaining class-action status up to and throughout

14  trial, Plaintiff acknowledges that there is no guarantee that class certification could be

15  obtained on the scope agreed to in the Settlement and that class certification might not

16  occur at all if the issue were litigated.  See, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S.

17  Ct. 2541 (June 20, 2011).   As explained above in connection with the strength of

18  Plaintiff's case, Plaintiff's claims inherently require a somewhat individualized inquiry,

19  and, if Defendant was to successfully oppose a contested motion for certification, the

20  Class would recover nothing.  Accordingly, this factor also weighs in favor of final

21  approval.  Courts routinely consider "the probable costs, in both time and money, of

22  continued litigation."  In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D.

23  Del. 2002).  In most cases, "unless the settlement is clearly inadequate, its acceptance and

24  approval are preferable to lengthy and expensive litigation with uncertain results."

25  National Rural Telecommunications Coop. v. DirecTV Inc., 221 F.R.D. 523, 526 (C.D.

26  Cal. 2004) (quoting Newberg, § 11:50 at 155).  Indeed, it has been held proper "to take

27  the bird in hand instead of a prospective flock in the bush."  DirecTV, 221 F.R.D. at 526

28  (quoting Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974)).

1  Settlement is encouraged in class actions where possible. Van Bronkhorst v. Safeco
2  Corp., 529 F. 2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that
3  there is an overriding public interest in settling and quieting litigation. This is particularly
4  true in class action suits which are now an ever increasing burden to so many federal
5  courts and which frequently present serious problems of management and expense.").

6       **D.    The Amount Offered in the Settlement.**

7       The total amount set aside for Class Members is $683,130.  Although this is not the
8  amount that either Plaintiff or Defendant hoped for, settlement represents a compromise
9  by the parties in light of the risks and costs of further litigation.

10       In determining whether the amount offered in settlement is fair, the Ninth Circuit
11  has suggested that a court must compare the settlement amount to the parties' "estimates
12  of the maximum amount of damages recoverable in a successful litigation." See In re
13  Mego Financial Corp. Securities Litig., 213 F.3d 454, 459 (9th Cir. 2000).  However, the
14  Ninth Circuit has more recently held that, in making such a comparison, a court need not
15  consider the potential enhancement of damages through penalties.  See Rodriguez v.
16  West Publishing Corp., 563 F.3d 948, 955 (9th Cir. 2009).  In Rodriguez, as here, a
17  substantial portion of the potential damages were funds that are theoretically recoverable
18  as penalties:  In Rodriguez, treble damages were at issue; here, penalties for violations of
19  sections 203 and 226 of the California Labor Code are at play.[10]  Rodriguez teaches that,
20  in considering whether to approve an antitrust class-action settlement, a court may
21  determine that a settlement is "reasonable even though [the court] evaluated the monetary
22  potion of the settlement based only on an estimate of single damages." Id. at 955.
23  Similarly, here, the Court may consider the settlement based only on an estimate of actual
24  damages, putting the penalty aspects of the case to the side in the process.

25       While the settlement does not represent Plaintiff's full amount of estimated
26  damages, "settlement is about compromise, a yielding of the highest hopes in exchange

27

28      [10] In Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094 (2007), the
California Supreme Court compared Labor Code penalties such as those at issue in this
case to treble damages.  Murphy, 40 Cal. 4th at 1103–04.)

1    for certainty and resolution." <u>In re Warfarin Sodium Antitrust Litig.</u>, 212 F.R.D. 231,

2    257 (D.C. Del. 2002).  Courts have routinely approved class-action settlements where the

3    settlement amount is in the percentage range of the claimed amount of damages here, as

4    well as where the settlement amount was a substantially lower percentage of the claimed

5    amount of damages. <u>See</u> <u>In re Cendant Corp. Litig.</u>, 264 F. 3d 201, 241 (3rd Cir. 2001)

6    (noting that recoveries can range from 1.6% to 14% and affirming settlement

7    representing 36% of recovery); <u>Nichols v. Smithkline Beecham Corp.</u>, 2005 WL 950616,

8    at *16 (E.D. Pa. 2005) (approving settlement that represented between 9.3% and 13.9%

9    of the claimed damages); <u>In re Warfarin</u>, 212 F.R.D. at 258 (finding settlement amount

10   representing 33% of maximum possible recovery was well within a reasonable range

11   when compared with recovery percentages in other class action settlements).  Although

12   Plaintiff believes his case is strong and that the Class could recover damages at trial, there

13   is always the risk that Plaintiff may not recover anything.

14        Given the uncertainty and risks faced by the parties to this litigation, it is

15   reasonable for the Court to grant final approval of the $683,130 settlement.  The amount

16   is particularly substantial in light of the additional delay in securing any payment that

17   would occur were the settlement not approved.  After all, even if Plaintiff prevailed at

18   trial, an appeal by Defendant could delay compensating Class Members by years.  Quite

19   simply, the settlement amount here is adequate and reasonable in the face of the inherent

20   risks involved with further litigation.

21        **E.    The Extent of Discovery Completed and the Stage of Proceedings.**

22        The Parties have conducted significant informal discovery.  A substantial amount

23   of information and a substantial number of documents have been exchanged and

24   reviewed in order to conduct meaningful settlement negotiations.  The parties have

25   conducted numerous informal interviews regarding the background of the case.  In any

26   event, regardless of whether extensive formal discovery has been conducted, "in the

27   context of class action settlements, 'formal discovery is not a necessary ticket to the

28   bargaining table' where the parties have sufficient information to make an informed

1  decision about the settlement." <u>Dunleavy</u>, 213 F.3d at 459 (quoting <u>Linney</u>, 151 F.3d at

2  1239).  "To approve a proposed settlement, the Court need not find that the parties have

3  engaged in extensive discovery." <u>In re Austrian and German Bank Holocaust Litig.</u>, 80

4  F.Supp.2d 164, 176 (S.D.N.Y. 2000).  What is required is that "sufficient discovery has

5  been taken or investigation completed to enable counsel and the court to act

6  intelligently." <u>Newberg</u> at § 11:41.  The amount of discovery taken in this case and the

7  stage of the proceedings weigh heavily in favor of the Settlement.  See <u>DirecTV</u>, 221

8  F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length

9  negotiation is presumed fair").

10        **F.    The Experience and Views of Counsel.**

11        In assessing the adequacy of the terms of a settlement, a trial court is entitled to—

12  and should—rely upon the judgment of experienced counsel for the parties.  See <u>Nat'l</u>

13  <u>Rural Telecomms. Coop.</u>, 221 F.R.D. at 528 ("Great weight is accorded to the

14  recommendation of counsel, who are most closely acquainted with the facts of the

15  underlying litigation.") (internal quotations omitted).  See also <u>Cotton v. Hinton</u>, 559

16  F.2d 1326, 1330 (5th Cir. 1977).  The basis for such reliance is that "[p]arties represented

17  by competent counsel are better positioned than courts to produce a settlement that fairly

18  reflects each party's expected outcome in the litigation." <u>In re Pacific Enters. Sec. Litig.</u>,

19  47 F.3d 373, 378 (9th Cir.1995).  Indeed, when evaluating a proposed settlement, absent

20  fraud, collusion, or the like, a court should be hesitant to substitute its own judgment for

21  that of counsel.  See <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1173 (4th Cir.1975).

22        After thorough consideration, Class Counsel concluded that the Settlement terms

23  are fair, adequate and reasonable and in the best interests of the Class as a whole, and

24  recommended that it be granted final approval.  In negotiating the terms of the

25  Settlement, Class Counsel represented that they considered a multitude of factors,

26  including: (a) the nature and complexity of the alleged offenses; (b) the availability and

27  admissibility of evidence to support each of the required elements of the alleged causes of

28  action; (c) the nature and idiosyncrasies of the industry; (d) the extent to which Class

1    Members were damaged by the alleged conduct of Defendants; (e) the defenses asserted;

2    (f) the anticipated motions to be filed by Defendants; and (g) the benefit of obtaining a

3    settlement on the proposed terms now, as opposed to awaiting a potentially greater

4    settlement or judgment at some unknown time in the future.   Class Counsel strongly

5    believe that the Settlement, is a fair, adequate, and reasonable resolution of Plaintiff and

6    Class Members' dispute with Defendant, and is preferable to continued litigation and the

7    costs and uncertainties associated therewith.   Accordingly, this factor weighs in favor of

8    approval of the Settlement.

9             **G.    The Reaction of Class Members to the Proposed Settlement.**

10            The last criterion for final approval is the reaction of the Class.   See Officers for

11   Justice v. Civil Serv. Comm'n of San Francisco, 688 F. 2d 615, 625 (9th Cir. 1982).   In

12   any class action of significant size, the absence of any objections would be "extremely

13   unusual."   See In re Anthracite Coal Antitrust Litigation, 79 F.R.D. 707, 712–13 (M.D.

14   Pa. 1978); DirecTV, 221 F.R.D. at 529 ("It is established that the absence of a large

15   number of objections to a proposed class action settlement raises a strong presumption

16   that the terms of a proposed class settlement action are favorable to the class members.").

17   The reaction of Class Members to this settlement has been entirely favorable.   As

18   explained by the Central District, "[i]t is established that the absence of a large number of

19   objections to a proposed class action settlement raises a strong presumption that the terms

20   of a proposed class settlement action are favorable to the class members" Nat'l Rural

21   Telecomms. Coop., 221 F.R.D. at 529.   In the matter presently before the Court, not a

22   single objection has been filed.   (Sherwood Decl. ¶ 11; Harris Decl. ¶ 13.)   Importantly,

23   no Class Members have filed requests for exclusion.   (Sherwood Decl. ¶ 10; Harris Decl.

24   ¶11.)   In addition, with a 66% participation rate, the reaction from the Class warrants

25   final approval of the Settlement.   See, e.g., Boyd v. Cechtle Corp., 485 F. Supp. 610, 624

26   (N.D. Cal. 1979) (objections from only 16% of the class was persuasive that the

27   settlement was adequate).

28

1    / / / /

2

3    **VIII.  CONCLUSION.**

4        The parties have reached an objection-free and exclusion-free settlement that

5    disposes of the risks, costs, and delay associated with further litigation.  Defendant denies

6    any and all liability in this action, but, through settlement, seeks to obtain closure.  For

7    reasons set forth above, the Court should grant final approval.

8    DATED:  May 8, 2012                        HARRIS & RUBLE

9

10                                             /s/
                                         _____
11                                             Alan Harris
                                             Abigail Treanor
12                                             *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28